UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Islamic Relief USA, | Court File No. _____ |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Minnesota School Boards Association Insurance Trust, | |
| Defendant. | |

---

Islamic Relief USA ("IRUSA") for its Complaint against the Minnesota School Boards Association Insurance Trust ("MSBAIT") states and alleges as follows:

## PARTIES

1. Plaintiff IRUSA is a California not-for-profit corporation with its principal place of business located in Alexandria, Virginia.

2. Defendant MSBAIT is, upon information and belief, a Minnesota not-for-profit entity providing insurance programs for its members, organized by the Minnesota School Boards Association and existing under the laws of the State of Minnesota, with its principal place of business located in St. Peter, Minnesota.

## JURISDICTION AND VENUE

3. Jurisdiction is proper under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) in that MSBAIT resides in this District.

## BACKGROUND FACTS AND NATURE OF THE ACTION

5. This is an action for breach of contract respecting IRUSA's entitlement to coverage under a policy of insurance that MSBAIT issued to Tarek ibn Ziyad Academy ("TiZA") and under which IRUSA was an insured.

### The Underlying Lawsuit

6. On or about January 21, 2009, the American Civil Liberties Union of Minnesota ("ACLU-MN") filed an action in this Court under the caption *American Civil Liberties Union of Minnesota v. Tarek ibn Ziyad Academy, et al.*, Civil File No. 09-138 (DWF-JJG) (the "Underlying Lawsuit"). A true and correct copy of the Complaint is attached as Exhibit A.

7. The Underlying Lawsuit names TiZA, IRUSA and others as defendants, and alleges that TiZA and IRUSA *inter alia* "set school policies that endorse and promote a single religion" and "used tax funds to sponsor and establish a school that is pervasively sectarian." (Ex. A, ¶ 51). The Underlying Lawsuit sought to require TiZA and IRUSA to, among other things, "correct and eliminate" TiZA's "establishments of religion." (*Id.*, Prayer for Relief, (b)).

8. Some of the establishments of religion that the Underlying Lawsuit sought to require TiZA and IRUSA to correct and eliminate as a result of the civil rights violations included a prayer that was prominently posted in the school's entryway and a prayer rug used primarily for religious purposes. (*Id.* ¶ 40).

2

9. On August 4, 2009, the ACLU-MN filed an amended complaint in the Underlying Lawsuit, alleging similar civil rights violations. A true and correct copy of the Amended Complaint is attached as Exhibit B.

10. Both the Complaint and the Amended Complaint sought attorneys' fees and costs from TiZA and IRUSA under the civil rights statute, 42 U.S.C. § 1988.

### TiZA and the Charter School Contract

11. As a Minnesota charter school, TiZA was required to have a third-party "sponsor," as that term was defined at the time in the Minnesota Charter School Act. At the time of the Underlying Lawsuit, IRUSA was TiZA's sponsor.

12. IRUSA and TiZA memorialized their relationship through a series of charter school contracts (collectively, the "Charter School Contract").

13. The Charter School Contract required TiZA to indemnify IRUSA against any liability that IRUSA might suffer as a result of its sponsorship.

### The MSBAIT Policy

14. MSBAIT issued to TiZA a Group Self-Insured Property and Casualty Plan Policy, No. 2000068005, which was in effect from July 30, 2008 to July 30, 2009 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit C.[1]

15. The MSBAIT Policy provides various types of coverage, including a Commercial General Liability Coverage Part (the "CGL coverage").

---

[1] The Policy was produced to IRUSA by TiZA during the Underlying Lawsuit, marked "Confidential" under the Protective Order in that case. On September 30, 2010, TiZA withdrew the confidentiality designation in writing.

16. IRUSA was named as an Additional Plan Participant under the CGL coverage in the MSBAIT Policy.

17. The CGL coverage provides that MSBAIT will pay, among others, those sums that its insured becomes legally obligated to pay as damages because of "personal and advertising injury."

18. The CGL coverage defines "personal and advertising injury" to include, among others, injury arising out of "violation of civil rights."

19. Although defined in other coverage parts in the Policy, the word "damages" is not defined in the CGL coverage.

### IRUSA's Tender

20. On July 29, 2009, IRUSA tendered its defense in the Underlying Lawsuit to TiZA and its insurer. A true and correct copy of the tender is attached as Exhibit D.

21. Upon information and belief, TiZA forwarded the July 29, 2009 letter to its insurance carrier, MSBAIT.

22. On information and belief, MSBAIT's only response to the July 29, 2009 letter was to deny insurance coverage for TiZA on the basis that TiZA's contractual liability to IRUSA was excluded under the Policy. Further, on information and belief, MSBAIT did not advise TiZA that MSBAIT's own contractual obligation to IRUSA would eliminate TiZA's contractual exposure to IRUSA.

23. MSBAIT did not respond to IRUSA, its insured under the Policy, regarding IRUSA's request for a defense.

24. MSBAIT did not acknowledge that IRUSA was an insured under the Policy.

25. MSBAIT did not provide a defense to IRUSA in the Underlying Lawsuit.

### MSBAIT's Untimely Acknowledgement, and Denial, of Coverage

26. In late 2010, IRUSA and the ACLU-MN were in negotiations to settle the claims against IRUSA in the Underlying Lawsuit. The settlement discussions contemplated monetary and non-monetary components.

27. On December 28, 2010, IRUSA notified TiZA of a settlement in principle with the ACLU-MN, disclosed the payment IRUSA would make under the settlement, and requested that TiZA confirm its contractual obligation to indemnify or propose a plan to assume IRUSA's defense.

28. On December 30, 2010, TiZA demanded that IRUSA produce to TiZA the non-monetary terms of the proposed settlement. Having no effect on the indemnity obligation, IRUSA declined to disclose those terms until they were final.

29. At this same time, MSBAIT was providing a defense to TiZA under the Policy. Upon information and belief, Ms. Lane Speak was the MSBAIT representative handling TiZA's claim.

30. On January 6, 2011, despite no communication since IRUSA's July 29, 2009 tender letter, MSBAIT contacted IRUSA and acknowledged that IRUSA was an additional insured under the Policy. A true and correct copy of the letter is attached as Exhibit E.

31. Although it was providing a defense to TiZA based upon the same allegations in the Underlying Lawsuit that had been asserted against IRUSA, MSBAIT did not acknowledge its duty to defend IRUSA.

32. Rather, MSBAIT, through Ms. Speak, advised that MSBAIT was aware of a "proposed settlement" between IRUSA and the ACLU-MN. MSBAIT instructed IRUSA not to enter into any settlement with the ACLU-MN without MSBAIT's consent because such settlement would be voluntary and not covered under the Policy. MSBAIT, through Ms. Speak, also instructed IRUSA to provide to MSBAIT the same settlement terms that IRUSA had just refused to provide to TiZA (to which MSBAIT was providing a defense under the Policy).

33. IRUSA provided the non-monetary settlement terms pursuant to MSBAIT's demand.

34. Immediately after receiving the extrinsic information, MSBAIT denied coverage to IRUSA, by letter transmitted January 17, 2011. A true and correct copy of the denial letter is attached as Exhibit F.[2]

35. MSBAIT's denial does not rely on or include any reference to the non-monetary settlement terms that it demanded IRUSA produce before MSBAIT could allegedly determine whether it had a duty to defend IRUSA.

### IRUSA's Settlement with the ACLU-MN

36. On or about January 31, 2011, the ACLU-MN and IRUSA entered into an agreement to settle the Underlying Lawsuit. Pursuant to the settlement agreement, IRUSA agreed to pay ACLU-MN $267,500 (the "Settlement Payment").

---

[2] The date on the Microsoft Word version of the letter that was transmitted by email automatically updated to the print date of September 26, 2012. The cover email shows the actual date of transmission.

37. Since the date that IRUSA tendered its defense, IRUSA incurred over $1,000,000 in costs and fees through the final adjudication of the Underlying Lawsuit.

38. As foreseeable and made necessary by MSBAIT's improper denial of coverage, IRUSA continues to incur costs and fees in pursuing reimbursement for its defense costs and settlement payment from TiZA, pursuant to the Charter School Contract, through fee petitions, appeals, and in bankruptcy proceedings.

## COUNT I - BREACH OF CONTRACT
**(Duty to Defend)**

39. IRUSA hereby incorporates and realleges the allegations in paragraphs 1 to 38 as if set forth fully herein.

40. The CGL coverage in the Policy provides coverage for alleged violations of civil rights.

41. IRUSA was an insured under the MSBAIT Policy CGL coverage.

42. MSBAIT was obligated to provide a defense to IRUSA against the allegations in the Underlying Lawsuit under the CGL coverage in the MSBAIT Policy.

43. IRUSA satisfied any conditions precedent necessary to trigger MSBAIT's duty to defend under the MSBAIT Policy.

44. No exclusions or limitations in the MSBAIT Policy applied to preclude MSBAIT's duty to defend IRUSA against the Underlying Lawsuit.

45. MSBAIT's denial of a defense to IRUSA constitutes a breach of the MSBAIT Policy.

46. As a result of its breach, MSBAIT is liable to IRUSA for all costs incurred in defending the Underlying Lawsuit through final adjudication.

47. As a result of its breach, MSBAIT is liable for the costs IRUSA has incurred in being forced to seek recovery from TiZA.

## COUNT II - BREACH OF CONTRACT
### (Duty to Indemnify)

48. IRUSA hereby incorporates and realleges the allegations in paragraphs 1 to 47 as if set forth fully herein.

49. MSBAIT was obligated under the Policy to indemnify IRUSA for those sums that IRUSA became legally obligated to pay as damages because of an alleged violation of civil rights.

50. IRUSA satisfied any conditions precedent necessary to trigger MSBAIT's duty to indemnify under the MSBAIT Policy.

51. No exclusions or limitations in the MSBAIT Policy applied to preclude MSBAIT's duty to indemnify IRUSA in the Underlying Lawsuit.

52. MSBAIT's refusal to indemnify IRUSA constitutes a breach of the MSBAIT Policy.

53. As a result of its breach, MSBAIT is liable to IRUSA for the Settlement Payment.

54. As a result of its breach, MSBAIT is liable for the costs IRUSA has incurred in being forced to seek recovery from TiZA.

**WHEREFORE,** Plaintiff Islamic Relief USA prays as follows:

(1)     For approximately $1,000,000 in damages arising from MSBAIT's breach of its duty to defend IRUSA in the Underlying Lawsuit;

(2)     For an award of damages in the amount of $267,500 arising from MSBAIT's breach of its duty to indemnify IRUSA in the Underlying Lawsuit;

(3)     For an award of IRUSA's reasonable attorney's fees and costs incurred in pursuing recovery from TiZA, arising from MSBAIT's breach of its duty to defend and indemnify;

(3)     For an award of IRUSA's reasonable attorneys' fees and costs incurred in prosecuting this action against MSBAIT;

(4)     All interest accrued, and accruing, on the damages above; and

(4)     For such other and further relief that this Court may deem just and proper.

Dated:  November 12, 2012          **TIMOTHY D. KELLY, P.A.**

*s/Sarah E. Bushnell*
Sarah E. Bushnell (#0326859)
3720 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
(612) 349-6171
sbushnell@timkellypa.com

***Attorney for Islamic Relief USA***